IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. ALLEN,<br><br>              Plaintiff,<br><br>    vs.<br><br>ATALANTA CORPORATION, et al.,<br><br>             Defendant. | No. CV-F-05-651 REC/SMS<br><br>ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS |

On August 15, 2005, the court heard the motion to dismiss filed by defendants Atalanta Corporation and Anatom Investment Corporation.

Upon due consideration of the record and the arguments of the parties, the court issues its ruling as set forth herein.

On May 17, 2005, Robert E. Allen filed a Complaint for Declaratory Relief against defendants Atalanta Corporation and Anatom Investment Corporation. Jurisdiction is alleged to be based on diversity of citizenship.

Defendants move to dismiss this Complaint pursuant to the

1

abstention doctrine set forth in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942), contending that an action pending in the Butte County Superior Court involves the same parties, the same underlying contracts, the same real property collateral, and similar state law issues.

    The Complaint alleges that Allen was a kiwi farmer in Butte, Yuba and Madera Counties; that his business included the operation of packing and cold storage facilities in Chico and Porterville; and that Allen owned most of the real property in his individual capacity and conducted his farming operations through a corporation, Alkop Farms, Inc., in which Allen held a 32% interest.  Alkop owned 100% of Regent Cold Storage.  Regent owned the cold storage facility in Porterville and Alkop leased the cold storage facility in Chico from Allen.  Beginning in 1993, Alkop and Atalanta entered into various financial agreements whereby Atalanta financed Alkop's crops, operations and marketing.  Allen guaranteed the obligation of Alkop to Atalanta by execution of a note to Atalanta.  Prior to 1993, Alkop became indebted to Calpine Containers, Inc.  Alkop's obligation to Calpine Containers was secured by a lien on Alkop property and on real property owned by Allen.  Anatom purchased the position of Calpine Containers on November 25, 1997 and was a fully secured creditor of Allen holding liens of the Alkop property and Allen's property.  On February 8, 1998, Allen filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern Division of California in Fresno.  Atalanta

was a fully secured creditor holding a lien junior to that of Anatom on the Alkop property and on some of Allen's properties and by a lien on property owned by Regent.  Allen proposed a plan of reorganization, which was confirmed over the objections of Anatom and Atalanta on April 26, 1999.  Anatom and Atalanta appealed the confirmed plan to the Eastern District Court and Judge Wanger affirmed the plan with a direction to the Bankruptcy Court to make appropriate findings of fact and conclusions of law regarding the interest rates to accrue on the secured debt of Anatom and Atalanta.  Anatom and Atalanta appealed to the Ninth Circuit and on September 13, 2002, the Ninth Circuit affirmed the Bankruptcy Court and Judge Wanger's ruling.  Thereafter, by stipulated order, the interest rate of 8.2% fixed in the confirmation order was determined to be the appropriate rate without the findings of fact and conclusions of law by the Bankruptcy Court required by Judge Wanger.  The Complaint further alleges:

> 16.  The amount of the allowed claim of both Anatom and Atalanta at the time of confirmation was disputed.  Allen filed motions to fix the claim at confirmation of both Anatom and Atalanta in November 2000 in anticipation of the ruling of Judge Wanger on the appeal of the confirmation order.  Oppositions were filed by both Defendants.  The motions were dropped from calendar following Defendants' appeal to the Ninth Circuit on February 2, 2001.

> 17. Following Defendants' two appeals, Allen reset both motions to fix the claim at confirmation for hearing on August 26, 2004.  The Bankruptcy Court required a re-filing of the motions which took place on September 8,

```
            2004.  The motions were again opposed by
            Anatom and Atalanta and following
            negotiations, the fully secured claim of each
            entity was fixed at the time of confirmation
            on April 26, 1999, by Stipulated Order. ....
```

The amount of Anatom's secured claim was fixed as of April 26, 1999 was $446,934.47 and that of Atalanta was fixed at $930,000.00.  The Complaint further alleges:

```
            18.  Allen has now arranged for the sale of a
            portion of his real property that serves as
            collateral for both the Anatom and Atalanta
            obligations.  At present, the sale price
            exceeds the total debt on the property.
            Allen has requested a demand for payoff from
            both Anatom and Atalanta and received a reply
            from both by letter dated April, 14, 2005.
```

Attached to the Complaint is Anatom's letter which states in pertinent part:

```
            Anatom's payoff demand as of April 1, 2005 is
            $733,198.58.  A complete itemization of the
            demand is enclosed.  The claimed post-
            confirmation legal expenses are recoverable
            under the express provisions of the debt
            instruments.  Specifically, the subject trust
            deeds each provide that any sums disbursed by
            Anatom for the reasonable fees of counsel to
            protect or enforce the security of its trust
            deeds in any action or proceeding (including
            any bankruptcy, reorganization or other
            debtor relief proceeding) will be additional
            secured indebtedness of your client, payable
            upon demand.
```

Atalanta's letter is also attached to the Complaint and states in pertinent part:

```
            Atalanta's payoff demand as of April 1, 2005
            is $953,854.13.  A complete itemization of
            the demand is enclosed.  The claimed post-
            confirmation legal expenses and interest are
            recoverable under the express provisions of
            the debt instruments.  Specifically, the
            subject trust deeds each provide that any
```

4

> sums disbursed by Atalanta for the reasonable fees of counsel to protect or enforce the security of its trust deeds in any action or proceeding (including any bankruptcy, reorganization, or other debtor relief proceeding) will be additional secured indebtedness of your client, will bear interest at the applicable rate, and will be payable by your client upon demand.

The Complaint alleges that a dispute has arisen between Allen and Anatom and Atalanta concerning the content, accuracy and basis of the payoff demand in light of existing law as it relates to this situation and that Allen believes that defendants' excessive demands are made in bad faith, with a conscious effort to disrupt, hinder, and/or prevent Allen from selling his real property in connection with the execution of the court approved plan of reorganization, and are consistent with defendants' past patter of bad faith conduct toward Allen in an effort to hinder and disrupt the Chapter 11 bankruptcy process.  The First Claim for Relief seeks a declaratory judgment that the attorneys' fees and expenses incurred in determining the amounts of the secured claims at confirmation were included in te stipulated orders setting the amounts and that no attorneys' fees relating to the determination of the amount of the claim after the hearing on confirmation on April 26, 1999 can be included in the claim as a matter of law because no additional fees were requested by either Anatom or Atalanta in resolving the motions.  The Second Claim for Relief seeks a declaratory judgment that Anatom and Atalanta cannot include attorneys' fees incurred on the appeals in their payoff demands because no attorneys' fees were awarded on either

5

1  appeal, because Allen was the prevailing party on both appeals,
2  because the attorneys' fees and expenses incurred in determining
3  the amounts of the secured claims at confirmation were included
4  in the stipulated orders setting the amounts and that no
5  attorneys' fees relating to the determination of the amount of
6  the claim after the hearing on confirmation on April 26, 1999 can
7  be included in the claim as a matter of law because no additional
8  fees were requested by either Anatom or Atalanta in resolving the
9  motions, and because the attorneys' fees sought by Anatom and
10 Atalanta are grossly excessive and unreasonable.  The Third Claim
11 for Relief seeks a declaration that any attorneys' fees and
12 expenses incurred by Anatom or Atalanta in connection with the
13 Alkop bankruptcy up to April 26, 1999 were included in the
14 allowed secured claims and that following confirmation of the
15 plan of reorganization, Anatom foreclosed on a 21.43 acre parcel
16 owned by Alkop, bidding $53,575.00, which was applied against the
17 Allen claim; that on June 18, 2002, after this foreclosure,
18 Alkop, Allen and Kay Martinelli filed an action against Anatom in
19 the Butte County Superior Court, Case No. 127703, alleging
20 wrongful foreclosure and various tort causes of action involving
21 the subsequent sale of the property to a third party, which case
22 is pending in the Butte County Superior Court; and that Anatom
23 has improperly included that attorneys' fees incurred in
24 connection with its defense of the Butte County Superior Court
25 case in its payoff demand of the Allen claim.  The Fourth Claim
26 for Relief seeks a declaration that Regent Cold Storage, Inc.

1  filed a Chapter 11 bankruptcy on March 16, 1999, which was
2  converted to a Chapter 7 bankruptcy in March, 2000; that the
3  Chapter 7 trustee sold the real property and cold storage
4  facility owned by Regent; that Atalanta received $54,988.45 which
5  was applied to the Allen claim; that any attorneys' fees and
6  expenses incurred by Atalanta prior to the confirmation of the
7  Allen plan of reorganization on April 26, 1999 were included in
8  Atalanta's secured claim; and that Atalanta has improperly
9  included in its payoff demand attorneys' fees and costs incurred
10 by Atalanta after the confirmation of the Allen plan in
11 connection with the Regent Chapter 11 case.  The Fifth and Sixth
12 Claims for Relief seeks a declaration concerning the proper
13 payoff amount plus interest of the Atalanta and Anatom secured
14 claims.

**B.  Defendants' Motion to Dismiss.**

Atalanta and Anatom move the court to dismiss this Complaint pursuant to the abstention doctrine set forth in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942).  In so moving, defendants assert that the action pending in the Butte County Superior Court involves the same parties, the same underlying contracts, the same real property collateral, and similar state law issues.

**1.  Butte County Superior Court Case.**

As alleged in the Complaint before this court, Alkop Agriservices, Inc., Robert E. Allen, and Kathleen Martinelli have filed an action in the Butte County Superior Court, Case No.

7

127703, against Anatom Investment Corporation, Atalanta Corporation, Lawyers Title Company, Commonwealth Land Title Company, Peter G. Gaimpaoli, and Peter G. Giampaoli IRA (hereinafter referred to as the Butte Action).  The Butte Action is now proceeding pursuant to the Third Amended Complaint (TAC). The TAC alleges that the real property involved in the Butte County Action is 21.43 acres located in Butte County.  The TAC alleges the secured positions of Anatom and Atalanta and further alleges that on April 23, 1997, Allen granted a deed of trust to secure the payment of a $150,000 promissory note to Martinelli (then Kathleen Allen, Allen's ex-wife), which deed of trust was senior to that held on the property by Atalanta.  Paragraph 12 alleges in pertinent part:

> 12.  On ... October 15, 1999, the defendants ... conducted a Trustee's Sale without giving notice to the plaintiffs, or any of them. While the property had a fair market value of as much as $1,285,800.00, defendant Anatom bid only $53,575.00 for the property.  There were no other bidders and the $53,575.00 bid was declared the winning bid.  That amount was insufficient to cover the demands on the First Deed of Trust and nothing was paid to Martinelli on her Second Deed of Trust and nothing was paid on the Third Deed of Trust; both security interests were extinguished by the Trustee's Sale of the subject property for only $53,575.00.

The First Cause of Action alleges interference with prospective business advantage against defendants Peter G. Gaimpaoli, and Peter G. Giampaoli IRA only and does not appear to be relevant to the instant motion to dismiss.  The Second Cause of Action is for specific performance and promissory estoppel against all

8

defendants and alleges in pertinent part:

>27. In the summer of 2001, plaintiffs and ... Anatom and ... Atalanta began preliminary negotiations regarding the reconveyance of the ... 21.43 acres and settlement of all disputes between the plaintiffs on the one hand and ... Anatom and Atalanta on the other hand.
>
>28. On September 24, 2001, ... Anatom and Atalanta made a written offer to ... Allen promising to reconvey to plaintiffs the ... 21.43 acres and to otherwise resolve all disputes with the plaintiffs ... Anatom and Atalanta ... if the plaintiffs paid the sum of $1.25 million to [Anatom and Atalanta] on or before May 30, 2002 ... In early-mid October, 2001, ... Allen made a Counter-Offer of $900,000.00. On October 21, 2001, ... Anatom and Atalanta rejected ... Allen's Counter-Offer ... in a writing that again offered to convey title to the 21.43 acres and otherwise settle all disputes on the terms set forth in the September 24, 2001, letter.
>
>29. ... Anatom and Atalanta knew or should have known that plaintiffs would reasonably rely on ... defendants' promise to reconvey the ... 21.43 acres and otherwise resolve all disputes if plaintiffs paid the sum of $1.25 million to [Anatom and Atalanta] on or before May 30, 2002. Plaintiffs relied on the aforementioned promise ... by, among other things, foregoing legal action to void the September, 1999, trustee's sale and by taking action to raise the $1.25 million.
>
>30. Plaintiffs, and each of them, have made demand that the defendants ... honor their promise to reconvey the 21.43 acres and accept the sum of $1.25 million to resolve all disputes between the plaintiffs ... and Anatom and Atalanta ... The defendants ... have failed and refused to do so.
>
>31. An injustice an be avoided only by enforcing, completely, ... Anatom and Atalanta's promise to reconvey the ... 21.43 acres to plaintiffs and otherwise resolve all

9

> disputes in exchange for the sum of $1.25 million from plaintiffs.
>
> 32. On ... May 2, 2002, while plaintiffs were in the process of raising the $1.25 million, said defendants sold the ... 21.43 acres to defendants Giampaoli. Defendants Giampaoli knew of the promise to reconvey the 21.43 acres and resolve all other disputes with ... Atalanta and Anatom. Defendants Giampaoli were also aware that, by buying the ... 21.43 acres from ... Anatom and Atalanta, defendants Giampaoli were making it impossible for the plaintiffs to reacquire the ... 21.43 acres and otherwise resolve all disputes between plaintiffs ... and Anatom and Atalanta ... for ... $1.25 million. As of May 14, 2004, ... Anatom and Atalanta demand more than $1.6 million to resolve all disputes with the plaintiffs, and said defendants are offering no real property to plaintiffs in consideration of the payment of that $1.6 million.
>
> 33. Plaintiffs have performed each, any and every obligation required of them by the terms of the ... written offers, excepting those that they were excused from doing because of the breaches by the defendants ....

The Third Cause of Action, which has been dismissed by the Butte County Superior Court as against Anatom and Atalanta without further leave to amend, alleged interference with prospective economic advantage against all defendants. The Third Cause of Action alleged in pertinent part:

> 36. Plaintiff Allen filed a Chapter 11 Petition in Federal Bankruptcy Court on ... February 4, 1998. Plaintiff Allen proposed a plan for the satisfaction of creditors, which plan was approved in March, 1999. This Confirmed Plan then became a written contract between plaintiff Allen and his creditors, including ... Anatom and Atalanta. The terms of the Confirmed Plan required that plaintiff Allen pay approximately $130,000.00 in April

10

and May of each year.  Upon failure to make any part of the such annual payments any creditor, including ... Anatom and Atalanta, had the legal right to petition the bankruptcy court to convert plaintiff Allen's Chapter 11 to a Chapter 7 and liquidate all of said plaintiff's assets.  In fact ... Anatom and Atalanta had on prior occasions attempted to cause the bankruptcy court to convert plaintiff Allen's Chapter 11 bankruptcy to a Chapter 7, liquidating, bankruptcy.

37.  Plaintiff Allen confided in defendants Giampaoli that he had to make payments of $100,000.00 during the month of May, 2002, to comply with the terms of said plaintiff's Chapter 11 Plan.  Plaintiff Allen also confided in defendants Giampaoli that [Allen] desired to obtain the $1.25 million to satisfy all claim of ... Anatom and Atalanta on or before the May 30, 2002 Chapter 11 Plan payments were due so as to eliminate the need to make the $100,000.00 Chapter 11 Plan payment which would otherwise be due then.

38.  On ... March 18, 2004, plaintiff Robert E. Allen caused written discovery in the form of Special Interrogatories, and Requests for Admission to be served on defendant Peter G. Giampaoli ... On ... May 5, 2004, plaintiff Robert E. Allen received said defendants' [sic] responses to plaintiffs' [sic] Special Interrogatories set No. One.  Plaintiffs' counsel reviewed these Special Interrogatory responses and learned the following: On ... June 12, 2002, defendant Giampaoli sent a letter to Thomas Gellert, an officer and/or representative of ... Anatom and Atalanta, stating that he, Giampaoli, wanted to purchase additional real property consisting of approximately 88 acres owned by plaintiff Allen and located adjacent to the 21.43 acres which are the subject of this action. Furthermore, defendant Giampaoli stated that defendants Anatom and Atalanta expected to obtain this additional real property by foreclosure when plaintiff Allen was not able to make his Chapter 11 payment due in May, 2002.

11

> 39.  Based upon the new facts revealed by defendant Giampaoli's discovery responses, plaintiffs realized that all of the defendants were actually conspiring together to interfere with plaintiff Allen's May, 2002, Chapter 11 plan payment in the amount of $100,000.00 by causing him to rely falsely on the promises of defendant Giampaoli to loan him funds to settle with ... Anatom and Atalanta.  The goal of this 'conspiracy' was that upon the anticipated failure of plaintiff Allen to make the May 2002 Chapter 11 plan payment, defendants Anatom and Atalanta would petition the bankruptcy court to convert plaintiff Allen's bankruptcy to a Chapter 7, liquidating bankruptcy so that defendants Anatom and Atalanta could foreclose on the approximately 88 acres owned by plaintiff Allen and then later sell that real property to defendant Giampaoli at a discount for residential sub-division purposes.
>
> ...
>
> 42.  When plaintiff Allen learned that defendants Giampaoli were not going to lend said plaintiff the money necessary to settle all disputes with defendants Anatom and Atalanta, and not even lend him the amounts necessary to pay the May, 2002, Chapter 11 Plan payment, it caused said plaintiff severe emotional upset, anxiety, nausea, insomnia, until said plaintiff was able to secure a loan of money from other sources to prevent the defendants ... from forcing him into Chapter 7, liquidating bankruptcy, and the loss of real property worth millions of dollars.  Plaintiff Allen suffered damages in an amount to be proved at trial.

The Fourth and Fifth Causes of Action, alleging intentional and negligent infliction of emotional distress caused by defendants' conspiracy to mislead Allen for the purpose of causing him to default on his Chapter 11 Plan payment due in May, 2002, were also dismissed as against Anatom and Atalanta without leave to

12

amend by the Butte County Superior Court.

On August 4, 2005, the Butte County Superior Court granted summary judgment for the defendants on the remaining causes of action.

### 2. **Standards Governing Resolution of Motion to Dismiss**.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in pertinent part that "any court of the United States, upon the filing of any appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." Although a suit otherwise satisfies subject matter jurisdiction prerequisites, a district court possesses discretion in determining whether and when to entertain an action under the Declaratory Judgment Act. Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1985); Brillhart, supra, 316 U.S. at 494. In Brillhart, the Supreme Court held:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit when another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495. The question for a district court presented with a suit under the Declaratory Judgment Act is to

> ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending

13

>           in the state court.  This may entail inquiry
>           into the scope of the pending state court
>           proceeding and the nature of defenses open
>           there.  The federal court may have to
>           consider whether the claims of all parties in
>           interest can satisfactorily be adjudicated in
>           that proceeding, whether necessary parties
>           have been joined, whether such parties are
>           amenable to process in that proceeding, etc.
>
>           We do not attempt a comprehensive enumeration
>           of what in other cases may be revealed as
>           relevant factors governing the exercise of a
>           district court's discretion. ....

Id.  In Polido v. State Farm Mut. Auto. Ins. Co., 110 F.3d 1418 (9th Cir. 1997), overruled on other grounds, Government Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998), the Ninth Circuit explained:

>           ... Exercise of the district court's
>           discretionary jurisdiction under Brillhart
>           furthers the policy against needlessly
>           deciding unsettled state law issues, prevents
>           duplicitous litigation, and discourages forum
>           shopping. ....
>
>           ...
>
>           ... [I]n determining whether to exercise its
>           discretionary jurisdiction to reach the
>           merits in an action for declaratory relief,
>           the dispositive question is not whether the
>           pending state proceeding is 'parallel,' but
>           rather, whether there was a procedural
>           vehicle available to the insurance company in
>           state court to resolve the issues filed in
>           federal court.  If a state court remedy is
>           available to the insurer, the district court
>           must consider whether circumstances exist
>           that overcome the 'presumption that the
>           entire suit should be heard in state court,'
>           ... to prevent forum shopping and piecemeal
>           litigation of complex state law issues. ....

110 F.3d at 1422-1423.

        **3.   Merits of Motion to Dismiss**.

14

1       Defendants argue that the court should exercise its
2  discretion under the Brillhart factors and abstain from hearing
3  this declaratory judgment action.
4       Defendants, while conceding that the claims in the two
5  actions are not identical, contend that the claims are parallel:

> The central issue in both cases is the
> correct amount required to satisfy the
> secured obligations owing from Plaintiff to
> Defendants.  In the Butte Action, Plaintiff
> seeks specific performance of an alleged
> settlement agreement wherein, he claims,
> Defendants promised to accept $1.25 million
> from Plaintiff in satisfaction of their
> combined secured claims ... The adjudication
> of the Butte Action in favor of Plaintiff
> would moot the instant declaratory relief
> action completely.  This is because the
> declaratory relief action addresses, albeit
> separately, claims which necessarily would be
> merged into the alleged settlement agreement.
> Plaintiff's claims therefore should be left
> for resolution by the state court in the
> Butte Action.

Defendants further argue that California's declaratory relief statute provides a remedy to plaintiff in the Butte Action to resolve the issues raised in the instant complaint.

California Code of Civil Procedure § 1060 provides in pertinent part:

> Any person interested under a written
> instrument, excluding a will or trust, or
> under a contract, or who desires a
> declaration of his or her rights or duties
> with respect to another, or in respect to,
> in, over or upon property, ... may, in cases
> of actual controversy relating to the legal
> rights and duties of the respective parties,
> bring an original action or cross-complaint
> in the superior court for a declaration of
> his or her rights and duties in the premises,
> including a determination of any question of

15

> construction or validity arising under the
> instrument or contract. He or she may ask
> for a declaration of rights or duties, either
> alone or with other relief; and the court may
> make a binding declaration of these rights or
> duties, whether or not further relief is or
> could be claimed at the time. The
> declaration may be either affirmative or
> negative in form and effect, and the
> declaration shall have the force of a final
> judgment. The declaration may be had before
> there has been any breach of the obligation
> in respect to which said declaration is
> sought.

Defendants contend that, because the Complaint filed in this court raises only state law claims, plaintiff has a remedy to resolve these state law claims in the Butte Action.

Finally, defendants argue, the Complaint filed in this court is duplicative of the Butte Action:

> Plaintiff has filed a federal action in an
> attempt to achieve the same result sought in
> the Butte Action: fixing the amounts of
> Defendants' respective claims. In order to
> do so, both courts will necessarily examine
> the same evidence, question the same
> witnesses and entertain the same arguments
> ....
>
> The District Court also should exercise its
> discretion to decline jurisdiction in order
> to avoid inconsistent state and federal
> judgments. While Defendants acknowledge that
> the settlement agreement alleged in the Butte
> Action is different from the underlying notes
> and security instruments, the two actions
> address the same fundamental issue: the
> amount of Plaintiff's debt to Defendants.
> That issue should be resolved by the state
> court in the pending Butte Action and not by
> a duplicative lawsuit before the District
> Court.

However, the court concurs with plaintiff that the <u>Brillhart</u>

16

factors weigh against discretionary abstention.[1]  The court concludes that the Complaint in this action is not parallel to the Butte Action because this Complaint does not involve the same or similar issues or all of the same parties.  The Butte Action does not, as contended by defendants, involve the amounts Allen owes under the respective notes and security instruments, but, rather, involves whether Allen and the defendants entered into a settlement agreement concerning Allen's obligations to Anatom and Atalanta and, if so, whether that settlement agreement can be specifically enforced.  Furthermore, the Butte County Superior Court has granted summary judgment for defendants.  Although defendants contend that, until that judgment is final there is still a possibility that the action before this court will duplicate the issues in the Butte County Action, the court does not consider the two actions to be parallel.

ACCORDINGLY:

1.  Defendants' Motion to Dismiss is denied.

///
///
///

---

[1] In so ruling, the court notes that plaintiff conceded at oral argument that the issues raised in the Complaint before this court involve issues of state law, not federal law as contended in plaintiff's opposition brief.  The court further notes that the Bankruptcy Court retained jurisdiction in its Order confirming the Second Amended Plan of Reorganization for the purposes set forth in the Bankruptcy Court's Order.  However, because plaintiff filed the instant Complaint in the District Court, the Bankruptcy Court's retention of jurisdiction has no relevance to the resolution of this motion to dismiss.

IT IS SO ORDERED.

**Dated:  August 29, 2005**                                    **/s/ Robert E. Coyle**
668554                                                      UNITED STATES DISTRICT JUDGE